We'll now hear the next case on the calendar, Gonzalez v. City of New York. We have Mr. Okole for the appellant. Mr. Okole, are you there? Yes, your honor. All right, you have two minutes reserved for rebuttal. You may proceed. May it please the court, I appear for Mr. Gonzalez. I'd like to devote my oral presentation to the failure to, there are issues we rely on, I'll brief all right, but I wanted to point out the failure to interview for the position of senior court representative in 2017. I issue the bond in mind that Mr. Gonzalez started working in the controller's office in 2002 and worked until 2011 before he was promoted to senior court representative. He held that position with distinction until February 2015 when he was then promoted to deputy chief. Without disputing whether the reason he was demoted, let's just get to why he was demoted. Interesting thing is that when Mr. Gonzalez was demoted, he was not demoted to senior court representative, a position from which he was promoted and in which he performed exceptionally well. He was demoted to administrative claims examiner level one with a settlement authority of 25,000, less than what he started with in 2002. One would then wonder, I mean, what's driving that? To give you just a quick rundown of the timeline in this, Gonzalez started working with the controller in 2002, 2011, promoted senior court representative. February 2015, promoted division chief. It was during that time that he was told to fire Luquier, which instruction he ignored because he believed it improper and unlawful. In August, he applied for the position of deputy division director of settlement and adjudication. That's five months from when he received his promotion. In September, he was interviewed for that position. It was in the same September that for the first time in his civil service career, they started writing things negative about him. They started with the interview. The interview was the first time that they wrote things negative about him. The interview for the position in September 2015. Then subsequent to that, about two weeks after, his supervisor started writing things. He didn't perform that. He didn't know how to do this. So we're looking at this timeline that from 2002 until September 2015, this gentleman had no problem. Then in February 2016, he was demoted. That's less than one year after he was promoted, he was demoted. And not just demoted, he wasn't demoted to his last position. He was demoted to a much earlier position and stripped of all his settlement authority, given only 25,000 settlement authority. We said this is retaliatory. What they were doing was clearly retaliatory. Now, after this demotion, at some point in 2017, the same position was advertised again, the senior court representative. This is the same position he had occupied before he applied. He was never invited for an interview. This brings me to the reason that the district court gave for justifying they are not interviewing him. Oh, he was absent for numerous times. He wasn't coming. So it's common sense not to interview him. But that ignores the fact that senior court representative was not required to sit behind. It's like saying that, well, if you're not qualified to drive a vehicle, a truck, you're not qualified to interview for clerical work in the office. There are two different things. The senior court representative position would have required him to go to courthouse and all that, coordinate with the law department and things like that. What he had been doing before, not sitting behind a computer, which comes back. Judge Bianco, this is Judge Bianco. Let me just interrupt you because you haven't addressed the fact that there was an administrative hearing and in the administrative hearing, a finding was made with respect to five different forms of excessive absenteeism and other misconduct. And those are entitled to, I think you can try to make me understand why they wouldn't be entitled to preclusive effect. But if those are entitled to preclusive effect, then you have to demonstrate that notwithstanding all those things, they should have still interviewed him. And if they fail to do so, it is retaliatory. So can you address that? Yes. Thank you, Your Honor. Well, this court already decided. And it's interesting that the appellees never referred to these two cases that I believe are governing here. Hill versus Coca-Cola bottling company, as well as Mattus-Fick. These are two did they address any of these two? This court already held that the fact that you could justify a dismissal does not preclude a finding, a subsequent finding of discrimination. And I say here retaliation. That's the decision in Hill versus Coca-Cola bottling company. So Mr. Alcoli, you're correct about that. The fact that there was a finding as to the misconduct doesn't necessarily mean you could not prove discrimination or retaliation. But the district court went on in the opinion after finding preclusive effect to that and saying in light of that, there is no evidence that would allow a rational jury to conclude retaliation given all that misconduct. Well, part of the evidence is the fact that he was demoted below his original position. What's the justification for that? What's the justification for giving him a lower position than senior court representative from when they demoted him from chief? So that has to be taken into account. What was going on in their mind? Why did they do that? Why did they reduce his settlement authority from over $300,000 to $25,000? And then stuck him in... Because he stopped attending work, right? No, no, no, no, no. That was after the demotion. That was after the demotion. I thought that's what you were talking about. You're not talking about the demotion? Yes, but I'm talking about the failure to interview him for the senior court representative position after the demotion. And the position came up again. They did not interview him. And only reason is, oh, he was excessively absent. But he was excessively absent from a job that required him to sit down behind a computer which was at his back and neck. That is not the same thing as a situation where he was going to the court and going to the law department where he did not have to sit down for five hours or six hours or stand behind the computer. There are different things. The requirements are different. The fact that you can't perform this doesn't mean you couldn't perform the other one. How about lying on your timesheet, lying about your work history, operating a jet ski while you're on FMLA leave? Why wouldn't those all be reasons why an employee would not want to interview someone for a new position? First, not only do we dispute that, but even by this same court's decision in Coca-Cola, even misconduct, even if you committed misconduct, that does not justify them now to go ahead and retaliate against you or to discriminate against you. So in spite of even leaving aside the fact that, yes, we did not pursue an Article 78, which, based on Coca-Cola, we didn't have to, we still challenge the fact that in spite of the negative finding against him or finding of quote-unquote just cause that he was retaliated against and this court is entitled to look at that. There is no preclusion. In fact, if you look at Matusik and Erie County, they did not meet any of the requirements for preclusion. At no point was it ever litigated before George Garcia whether this man was retaliated against under Section 1983 or 1981 of 42 U.S.C. The only thing was whether under the civil service law, whether his whistleblowing had an effect, but that's a different thing from whether he was retaliated against in a wider Section 1983 or Section 1981. I think your time is up, but you have your two minutes for rebuttal. Okay. All right. Thank you. Ms. Fletcher, you're up. Good morning. May it please the Court, Kate Fletcher for the defendants. I would begin by pointing out that the question of retaliation in connection with his demotion has not been preserved on appeal and is consequently not before this Court. I would then address the issue of why was Gonzalez's claim that he was not promoted to deputy director position in retaliation for his refusal to aspire to lose care. Initially, I would point out that he relied entirely on temporal proximity to establish causal nexus and that the gap of six and a half months in the context of this case is simply too long. Further, he did not challenge this aspect of the district court's decision on appeal, but Gonzalez also failed to show that the legitimate reasons for not promoting him were contextual. Contemporaneous records show that the interviews for deputy director positions introduced that Gonzalez performed poorly, and in contrast, Ms. Riley's performance was well regarded. And this was agreed on by Ms. Diaz, who in particular is not a defendant on this case. Further, employers have unfettered discretion to choose among qualified candidates, and Ms. Riley, in fact, met the prerequisites for the position. To the extent that Gonzalez has argued he has superior qualifications, they were not so superior that no reasonable person exercising impartial judgment could have chosen Riley over him for the job. In fact, Riley had qualifications and experience that he did not. In fact, regarding Gonzalez's claim that he was not interviewed for senior court representative in retaliation for his refusal to engage in unlawful employment practices, the ALJ findings are indeed entitled to preclusive effect, and Gonzalez has presented no evidence to suggest that the legitimate reasons for their decisions were pretextual. And none of his, excuse me, while he may have performed the job before, and may have been physically capable of performing the job, defendants were certainly entitled to business judgment in weighing his excessive absenteeism, more than 108 days in 2016 alone, against his potential, his prior performance as court representative. Furthermore, the disciplinary charges were also not in retaliation for his DOI complaint. He was unable to make a prima facie case because he could not show that there was knowledge of the disciplinary charges were brought. The complaint was sent in January 2017, and the charges were brought a month later, but the DOI did not refer the complaint to the comptroller's office until April 2017. As for pretext, again, the ALJ findings of extensive misconduct in this case are entitled to preclusive effect, and he again offered no evidence to suggest that Furthermore, the district court was correct in dismissing his due process claim and his constructive discharge claim. Civil service law section 72 provides a discretionary course of action for employers, and does not create an entitlement to consideration of a request for leave. And when an administrative scheme merely authorizes particular actions, it does not create a constitutionally protected entitlement. In addition, for the constructive discharge, that exists when an employer intentionally creates an intolerable work atmosphere that forces an employee to quit. But in this case, Gonzalez was formally terminated, and there therefore could not have been a constructive discharge. I would just point out again that the demotion is not at issue in this case, and there is ample reason to show that the defendants relied on his legitimate misconduct and poor performance in his interview in making the employment decisions that they made. If there are no further questions, the defendants rest on their brief. I have no questions. Thank you, Ms. Fletcher. Mr. Okola, you have two minutes in rebuttal. The only thing I wish to address is the issue of knowledge. The decisions of this court do not require anything other than corporate knowledge. The City of New York knew about the exercise of the plaintiff. Summa versus Hofstra University citing to Gordon versus New York City Board of Education said it this way, nothing more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity, unquote. The argument that these individuals did not know about it is totally of no moment. I do not have further questions. I will rely on the paperwork that has been submitted. Okay. Thank you, Mr. Okola. We will thank you to both of you. We will reserve the decision. Have a good day. Thank you, Your Honor. Thank you, Your Honor.